IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEWIS-GOETZ AND COMPANY, INC., and GOODALL RUBBER COMPANY OF CANADA ULC<br><br>Plaintiffs,<br><br>v.<br><br>GOODALL RUBBER COMPANY, and TRELLEBORG CORPORATION,<br><br>Defendants. | No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Lewis-Goetz and Company, Inc. and Goodall Rubber Company of Canada ULC by and through its counsel, Metz Lewis LLC, files the following Complaint:

### I. PARTIES, JURISDICTION, AND VENUE.

1. Plaintiff, Lewis-Goetz and Company, Inc. ("Lewis-Goetz"), is a Pennsylvania corporation with its principal place of business located at 650 Washington Road, Suite 210, Pittsburgh, Pennsylvania 15228.

2. Plaintiff, Goodall Rubber Company of Canada ULC ("Goodall Canada") is an Alberta unlimited liability corporation formed by amalgamation under the laws of the Province of Alberta, Canada, with its registered office located at 2900 Manulife Place, 10180-101 Street NW, Edmonton, Alberta, Canada, T5J3V5.

3. Defendant, Goodall Rubber Company, is a New Jersey corporation which is believed to maintain its principal place of business at 445 Enterprise Court, Bloomfield Hills, Michigan 48302.

4. Goodall Rubber Company also owned a Canadian subsidiary known at the time as Goodall Rubber Company of Canada, Ltd. (which later amalgamated with DRG Canada

Holdings ULC to become Goodall Rubber Company of Canada ULC.) Collectively, Goodall Rubber Company and Goodall Rubber Company of Canada, ULC shall be referred to as "Goodall."

5. Defendant, Trelleborg Corporation ("Trelleborg"), is a Delaware corporation with its principal place of business located at 445 Enterprise Court, Bloomfield Hills, Michigan 48302.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount of controversy exceeds $75,000, exclusive of interest and costs. This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events, acts, or omissions giving rise to the claims occurred in this district.

## II. BACKGROUND.

7. On March 30, 2006, Lewis-Goetz, DRG Canada Holdings, ULC, Goodall Rubber Company and Trelleborg executed an Asset and Stock Purchase Agreement ("Agreement") by which Lewis-Goetz and DRG purchased certain assets of Goodall Rubber Company, which included the stock of Goodall Rubber Company of Canada, Ltd. Trelleborg was the indirect beneficial owner of the all outstanding shares of Goodall Rubber Company and entered into the Agreement for purposes of guaranteeing certain matters as provided in the Agreement. Because the entire Agreement is voluminous, only provisions of the Agreement relevant to this action are attached to this Complaint as Exhibit "A".

8. Goodall Canada is the successor to DRG Canada Holdings, ULC by virtue of amalgamations which occurred post closing. Throughout this Complaint, Lewis-Goetz and Goodall Canada will be collectively referred to as "Buyers".

2

9. Prior to the Agreement, Goodall primarily designed, engineered, fabricated, manufactured, and distributed industrial rubber products such as conveyor belt, industrial hose and fittings, and related components.

10. Buyers were and are involved in the business of offering a complete line of hose, conveyor belting, gaskets, packing, accessories, and other related business related products. Accordingly, the assets it purchased under the Agreement were complimentary to its business.

11. Pursuant to the terms of the Agreement, Goodall made certain representations and warranties related to the business of Goodall and the assets to be sold. Buyers relied upon these representation and warranties made by Goodall.

12. Specifically, Goodall made certain representations regarding the status and post-closing transferability of certain contracts to which Goodall was a party and regarding contracts material to its business operations.

13. In addition, Goodall made representations regarding the pension plan maintained for employees of Goodall Canada ("Pension Plan"), including the status of the Pension Plan and its compliance with all applicable laws.

14. Goodall also made representation regarding compliance of various tax laws and the status of its tax liabilities.

15. Goodall has failed or otherwise refused to honor its obligations set forth by contract to remediate environmental issues regarding the Oshawa, Ontario facility.

A. **Representations Regarding the Movex Software System License.**

16. Prior to and subsequent to closing, Goodall and Goodall Canada utilized for its Enterprise Resource Planning ("ERP"), package software known as the Movex Software System (the "Movex Software").

17. Goodall used the Movex Software pursuant to a license (the "Movex License").

18. Goodall did not make the Movex License available to Buyers for review during the due diligence process of the transaction subject to the Agreement.

19. Buyers learned after closing that Goodall did not hold the Movex License in its name. Trelleborg held the Movex License in the name of Trelleborg.

20. Unbeknown to Buyers, the Movex License prohibited assignment and Goodall's right to use the Movex Software was contingent on Goodall being a part of "group of companies" or a business unit of Trelleborg.

21. Subsequent to closing, Lawson Software, the owner of the licensing rights to the Movex Software, contacted Buyer and informed Buyer that it could not continue to use the Movex Software unless it paid a license transfer fee of $250,000 in order to acquire from Lawson Software the right to utilize the Movex Software.

22. Pursuant to section 3.1.4 of the Agreement, Goodall represented that it did not require any third party consent to assign any contract to Buyers under the Agreement, unless such contract was disclosed on Schedule 3.1.4 of the Agreement. Goodall did not include the Movex License on Schedule 3.1.4 of the Agreement.

23. Goodall's failure to disclose the Movex License on Schedule 3.1.4 represented to Buyers that the Movex License did not require third party consent for Buyers to use the Movex Software after closing on the Agreement.

24. Additionally, Goodall represented under the Agreement that Schedules 3.1.16(a) and 3.2.16(a) constituted a complete and correct list and description of all contracts material to the operations of Goodall.

25. The Movex License was not listed on Schedule 3.1.16(a) or 3.2.16(a), despite being material to Goodall's business operations.

26. Goodall should have disclosed the Movex License on either Schedule 3.1.16(a) or Schedule 3.2.16(a) of the Agreement, and should have disclosed the Movex License on Schedule 3.1.4 of the Agreement.

27. Goodall also represented it would use reasonable commercial efforts to obtain written consent from third parties for the transfer, assignment, or sublicense of contracts material to its business, and unless otherwise specified, that no consent was required to maintain all rights under contracts material to its business.

28. Goodall did not obtain written consent from Lawson Software for the transfer, assignment, or sublicense of the Movex License.

29. Buyers had no knowledge the Movex License existed, or that it would need to incur costs in excess of $250,000 to acquire the right to use the Movex Software.

30. Buyers have suffered harm by Goodall's failure to accurately disclose the Movex License.

31. On October 30, 2007, Buyers placed Trelleborg on notice pursuant to the Agreement of its claim for indemnification. *See* Exhibit "B".

32. Trelleborg has refuse to honor its contractual obligation to indemnify Buyers.

### B. Representations Regarding the Pension Plan.

33. Goodall made several representations in the Agreement regarding the status of the Canadian Pension Plan and its compliance with applicable laws.

34. Specifically, Goodall represented that the Pension Plan had been duly "administered in material compliance with its provisions and is in material compliance with Applicable Law." *See* Ex. A at § 3.2.14(a).

35. Subsequent to closing under the Agreement, Buyers learned that Goodall's representations regarding the Pension Plan were not accurate. Specifically, Buyers learned that

the Pension Plan was not in compliance with certain provisions of applicable law and thus contrary to Goodall's representation in section 3.2.14(a) of the Agreement. By way of example only, the Pension Plan was not compliant with law due to: failures to file audited financial statements, failures to adopt a statement of investment policies and procedures, failures to maintain Plan documents, failures to comply with the Guidelines for Capital Accumulation Plans published by the Canadian Association of Pension Supervisory Authorities, errors regarding fees in the defined contribution component of the Plan, and due to an imprudent asset mix for a defined component of the Plan. These deficiencies were contrary to "Applicable Laws," as that term is defined in the Agreement.

36. Buyers have incurred fees and expenses in excess of $150,000 in order to bring the Pension Plan and its operation into compliance with Applicable Laws.

37. Buyers have suffered harmed by Goodall's failure to represent correctly the Pension Plan's lack of compliance with Applicable Laws.

38. On October 30, Buyers placed Trelleborg on notice of said claim. *See* Exhibit "B".

39. Trelleborg has refused to honor its contractual obligation to indemnify.

C. **Canadian Revenue Authority Audit**.

40. On or about July 24, 2007, Buyers received notice that the Canadian Revenue Authority ("CRA") was conducting an audit of Goodall Rubber Company of Canada, ULC with respect to certain deducted royalty payments (hereinafter the "CRA Audit"). A copy of the notice is attached as Exhibit "C".

41. The years in question for the audit ranged from 2002-2006.

42. With the consent of Trelleborg, Buyers retained KPMG to assist it with the audit.

43. Prior to the 2007 audit, Goodall Rubber Company of Canada, Ltd. had previously been audited with respect to the same deducted royalties and had utilized the services of KPMG.

44. The results of the audit concluded that $242,272 in taxes was owed related to unpermitted deducted royalties.

45. The only years affected by these non-deductible royalties were 2002 and 2003, which pre-date the 2006 transaction.

46. Thus, Buyers did not cause or contribute in any way to the tax liability of Goodall Rubber Company of Canada, ULC.

47. The Agreement provided at ¶ 8.1(a)(viii) that tax liabilities incurred prior to the closing date will be paid by Goodall.

48. Goodall also represented pursuant to Article III of the Agreement that Goodall Canada did not have any material liability or obligation other than that disclosed (*see* 3.2.6(b)); that Goodall Canada was in compliance with all applicable laws (*see* 3.2.9); that its tax returns were duly filed and accurate (*see* 3.2.12, (a) and (b)).

49. On October 30, 2007, Buyers placed Trelleborg on notice of its claim for indemnification. *See* Exhibit "D".

50. Trelleborg has refused to honor its indemnification obligation.

51. In addition to Buyers paying $242,274 in taxes relating to the CRA Audit owed by Goodall Canada as stated above, Buyers paid $78,967 in accounting fees associated with the audit that concluded that all years in question pre-date the Agreement.

### D.   Environmental Remediation.

52. As part of the Agreement, the parties to the Agreement executed a letter agreement dated March 26, 2006, regarding certain additional agreements related to the

Agreement (hereinafter "Letter Agreement"). A copy of the Letter Agreement is attached as Exhibit "E".

53. Pursuant to the Letter Agreement, Goodall agreed to assume all responsibility for causing the remediation of Goodall Canada's Oshawa, Ontario facility to be completed, including without limitation, "sole responsibility to pay the costs thereof".

54. Goodall has failed to cause the facility to be remediated and has refused to act on Buyers' demands for compliance with the Letter Agreement.

### III. CAUSES OF ACTION.

### Count I - Breach of Contract

55. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 48 of this Complaint as if set forth in their entirety.

56. Buyers and Goodall entered into the Agreement, which is supported by consideration and for which Buyers have satisfied all conditions precedent to enforcement.

57. Goodall has breached the Agreement by misrepresenting the status of the Movex License, the Pension Plan's compliance with Applicable Laws, and CRA Audit.

58. Further, Goodall has breached the Letter Agreement by failing to remediate or pay the costs of remediation for the Oshawa, Ontario facility.

59. Buyers notified Goodall and Trelleborg of certain facts giving rise to claims for indemnification and made demand for indemnification pursuant to the terms of the Agreement.

60. Buys have likewise demanded compliance with the Letter Agreement.

61. Goodall and Trelleborg have rejected the claims in their entirety.

62. Goodall and Trelleborg's failure to disclose correctly the status of the Movex License, the correct status of the Pension Plan, and assume liability for the CRA Audit materially breaches of the Agreement.

63. Goodall and Trelleborg's failure to perform pursuant to the Letter Agreement constitutes a breach of the Letter Agreement.

64. Buyers have suffered harm as a direct and proximate result of these breaches of the Agreement.

WHEREFORE, Lewis-Goetz and Company, Inc. and Goodall Rubber Company of Canada ULC request judgment in their favor and against Goodall Rubber Company and Trelleborg Corporation in an amount in excess of $75,000, excluding interest and costs.

Dated: __March 29__, 2010

Respectfully submitted,

METZ LEWIS LLC

By: /s/ Brian T. Must, Esquire
    Pa. I.D. No.: 49657
    Kenneth S. Kornacki, Esquire
    Pa. I.D. No.: 83739
    11 Stanwix Street, 18th Floor
    Pittsburgh, PA 15222
    Phone: (412) 918-1100
    Fax: (412) 918-1199
    E-mail: bmust@metzlewis.com

Counsel for Plaintiffs:
LEWIS-GOETZ AND COMPANY, INC., and
GOODALL RUBBER COMPANY OF
CANADA ULC